UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CHRISTIANA PAUL,
105-48 Avenue K
Brooklyn, NY 11226,
Plaintiff,

v.

## 25 CV 10358

ASSISTANT DISTRICT ATTORNEY RICHARD FARRELL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;ASSISTANT DISTRICT ATTORNEY JOHN C. CARROLL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;DETECTIVE GREENE KUSH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT JOSEPH PISCATELLA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE OFFICER PAUL H. ALVA (TAX #963372), IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT EVAN A. COUCH (TAX #965013), IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE OFFICER KARISA M. CRAWFORD (TAX #969610), IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;SENIOR COUNSEL JOSEPH ZANGRILLI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;MURIEL GOODE-TRUFANT, ACTING CORPORATION COUNSEL, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;ASSISTANT CORPORATION COUNSEL HANNAH OLEYNIK, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;CITY OF NEW YORK; PRIVATE-ACTOR DEFENDANTS: LYNN JEROME AND PAULA SINCLAIR, DANIEL FRIEDMAN, Esq.
Defendants.

Case No.: _____
JURY TRIAL DEMANDED

---

**COMPLAINT**

Plaintiff **Christiana C. Paul**, by and for himself, alleges as follows:

---

**PRELIMINARY STATEMENT**

**1.**
This is a federal civil rights action brought by **Plaintiff CHRISTIANA C. PAUL**, a 50% owner of **1883 East 53rd Street, LLC**, and the spouse of **Wayne Wilson**, who jointly purchased the complainants' property in a legitimate, arms-length real estate transaction. Plaintiff Paul seeks redress for the extensive constitutional, reputational, property, and economic injuries she suffered when NYPD Detective **Greene Kush**, the **Kings County District Attorney's Office**, the **Office of the Corporation Counsel**, and private defendants **Lynn Jerome** and **Paula Sinclair** conspired to fabricate a criminal narrative alleging deed fraud and felony larceny concerning the property in which she holds a lawful ownership interest.

**2.**
The complainants—Jerome and Sinclair—knowingly submitted **false accusations** claiming that their deed had been forged and that the property was unlawfully transferred. These allegations were contradicted by public records, banking documentation, transactional paperwork, and the

complainants' own prior conduct. Nevertheless, NYPD and KCDAO adopted the fabricated narrative **without investigation**, weaponizing false allegations against innocent parties, including Plaintiff Paul.

**3.**

NYPD Detective Greene Kush created a false criminal narrative and KCDAO prosecutors **ratified** it, despite having actual or constructive knowledge that no deed fraud occurred. The Kings County District Attorney's Office, through ADA **Richard Farrell** and ADA **John Carroll**, then maintained the false narrative, misrepresented that a criminal case existed, and falsely asserted that such a case was "sealed" under CPL § 160.50 — even though no case, arrest, or arraignment ever existed.

**4.**

The City of New York escalated these constitutional violations by submitting **Rule 11–certified filings** in the Southern District of New York that repeated and validated the fabricated felony allegations. These municipal filings falsely asserted that a felony arrest, arraignment, and sealed criminal case existed, thereby creating a **publicly accessible, government-endorsed defamatory narrative**.

**5.**

As a direct result of Defendants' actions, Plaintiff Paul suffered:

- reputational injury from being falsely connected to "deed fraud,"

- a cloud on the title to the property,

- interference with her ownership rights under state and federal law,

- obstruction of development, refinancing, and rental plans,

- delays in LLC operations,

- reduced property and equity value,

- emotional distress and humiliation,

- and continuing constitutional injury due to ongoing publication of the City's false filings.

**6.**

The Second Circuit recognizes that **fabrication of evidence** (Ricciuti; Zahrey), **stigma-plus constitutional defamation** (Valmonte; Patterson), **property-interest deprivation** (Spinelli; O'Connor), **municipal policymaker ratification** (Jeffes; Mangino), and **retaliatory government conduct** (Dorsett; Curley) form actionable constitutional claims.

**7.**

Through this action, Plaintiff Paul seeks compensatory and punitive damages; declaratory judgments; injunctive relief requiring correction of false municipal filings; and attorney's fees under **42 U.S.C. § 1988**.

---

## PARTIES

**8.**

**Plaintiff CHRISTIANA C. PAUL** ("Plaintiff Paul") is an adult resident of Kings County, residing at **105-48 Avenue K, Brooklyn, NY 11236**. She is the **50% owner** of **1883 East 53rd**

**Street, LLC**, the lawful purchaser of the property located at **1883 East 53rd Street, Brooklyn, NY**. Plaintiff Paul's property interests, business rights, financial expectations, title integrity, and personal reputation were directly harmed by Defendants' coordinated fabrication of a criminal narrative alleging deed fraud and felony larceny.

**9.**
**Plaintiff's LLC — 1883 East 53rd Street, LLC** is jointly owned by Plaintiff Paul (50%) and her spouse **Wayne Wilson** (50%). The LLC acquired the property through a legitimate real estate transaction supported by banking records, transfer documents, and full consideration. The LLC's operations, title rights, refinancing abilities, equity value, and development timeline were severely disrupted by Defendants' false criminal accusations.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

For Plaintiff Paul, the Ellis filings repeatedly disseminated the false assertion that the deed transfer involving 1883 East 53rd Street was fraudulent and linked to a nonexistent felony case. These publications clouded title, impaired refinancing, reduced equity value, and harmed her ownership in 1883 East 53rd Street, LLC.

---

**Defendant Municipal Entity**

**10.**
**Defendant CITY OF NEW YORK** ("the City") is a municipal corporation organized under the

laws of the State of New York. At all relevant times, the City acted through its agencies, employees, policymakers, and subdivisions, including the New York City Police Department ("NYPD"), the Kings County District Attorney's Office ("KCDAO"), and the Office of the Corporation Counsel.

**NYPD Defendants**

**11.**
**Defendant Detective Greene Kush (a/k/a Greene Cush)** was the lead New York City Police Department officer responsible for fabricating the false criminal allegations relating to supposed deed fraud and felony larceny. He acted under color of state law and in his individual and official capacities.

**12.**
**Defendant Sergeant Evan A. Couch** (NYPD Supervisor, Tax #965013) approved, supervised, and ratified the fabricated reports authored by Detective Kush. He acted under color of state law.

**13.**
**Defendant Police Officer Paul H. Alva** (Tax #963372) assisted in drafting, entering, or processing reports relying on fabricated allegations. He acted under color of state law.

**14.**
**Defendant Police Officer Karisa M. Crawford** (Tax #969610) entered, maintained, or transmitted fabricated or misleading information into NYPD systems. She acted under color of state law.

**15.**
**Defendant Sergeant Joseph Piscatella** participated in reviewing, approving, or supervising the handling of the false allegations and related documents, contributing to the perpetuation of the fabricated narrative.

**16.**
**John/Jane Doe NYPD Officers 1–10** and **John/Jane Doe Investigators 1–10** are NYPD employees whose identities are currently unknown and who participated in the fabrication, adoption, processing, or concealment of false allegations.

**KCDAO Defendants**

**17.**
**Defendant Assistant District Attorney Richard Farrell** knowingly adopted Detective Kush's fabricated allegations without performing any investigation. He knowingly misrepresented the existence of a criminal case and enabled the false narrative to proceed. He acted under color of state law.

**18.**
**Defendant Assistant District Attorney John C. Carroll** falsely asserted in FOIL responses that a sealed criminal case existed involving the deed transfer, despite having actual knowledge that no arrest, arraignment, docket number, or sealing order existed.

**Corporation Counsel Defendants**

19.

**Defendant Muriel Goode-Trufant**, Corporation Counsel of the City of New York, is a final policymaker responsible for reviewing, approving, and authorizing the City's litigation positions, including Rule 11–certified filings that repeated fabricated allegations.

20.

**Defendant Joseph Zangrilli**, Senior Counsel in the Special Federal Litigation Division, drafted, authorized, and ratified filings falsely asserting that a felony arrest, arraignment, and sealed case existed. He acted as a municipal policymaker for purposes of Monell liability.

21.

**Defendant Hannah Oleynik**, Assistant Corporation Counsel, drafted, submitted, or ratified Rule 11–certified filings containing materially false statements about the existence of criminal proceedings. She acted under color of state law.

---

**Private Defendants Acting Under Color of Law**

22.

**Defendant Lynn Jerome** is a private complainant who knowingly submitted false allegations to NYPD asserting that her deed had been forged. She acted jointly with NYPD, KCDAO, and Corporation Counsel, thereby acting under color of state law for purposes of 42 U.S.C. §§ 1983, 1985, and 1986.

23.

**Defendant Paula Sinclair** is a private complainant who, along with Jerome, knowingly submitted false statements that initiated and perpetuated the fabricated criminal narrative. She acted jointly with state actors and is therefore liable under federal civil rights statutes.

24.

**Defendant Daniel Friedman, Esq.** is the attorney who represented Jerome and Sinclair in related civil litigation. Despite having actual notice that the allegations were false—and after receiving evidence contradicting the complainants' story—he knowingly filed civil claims premised on false criminal allegations. By coordinating with state actors to suppress exculpatory information and prolong the fabricated narrative, he acted under color of state law.

---

**JURISDICTION & VENUE**

25.

This action arises under the Constitution and laws of the United States, including **42 U.S.C. §§ 1983, 1985, 1986, and 1988**, and the **First and Fourteenth Amendments** to the United States Constitution. Accordingly, this Court has **federal question jurisdiction** under **28 U.S.C. § 1331**.

26.

This Court has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because Plaintiff seeks redress for the deprivation of constitutional rights committed under color of state law, including evidence fabrication, deprivation of property interests, constitutional defamation ("stigma-plus"), conspiracy, and retaliation.

**Authority:** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).

**27.**
This Court has authority to grant **declaratory and injunctive relief** pursuant to **28 U.S.C. §§ 2201–2202**, as Plaintiff seeks declarations concerning the falsity and unlawfulness of the City's Rule 11 filings and injunctive orders preventing ongoing constitutional injury caused by the City's continued publication of fabricated criminal allegations.

**28.**
This Court has supplemental jurisdiction over any state-law claims pursuant to **28 U.S.C. § 1367(a)** because those claims arise from the same nucleus of operative facts as Plaintiff's federal constitutional claims.

## Venue in the Southern District of New York

**29.**
Venue is proper in the Southern District of New York under **28 U.S.C. § 1391(b)(1)** because **Defendant City of New York** resides in this District for venue purposes. The Office of the Corporation Counsel—whose decisions, Rule 11 certifications, and policymaker ratification form a central part of the constitutional violations—operates principally within this District.

**30.**
Venue is also proper under **28 U.S.C. § 1391(b)(2)** because a **substantial part of the events or omissions giving rise to the claims** occurred in this District, including:

(a) the preparation, approval, and filing of the City's Rule 11–certified submissions in SDNY;
(b) municipal policymaker ratification of fabricated allegations;
(c) the maintenance of materially false filings on federal dockets accessible to the public and relied upon by government agencies;
(d) the ongoing publication of defamatory and fabricated government information.

**Authority:**
Municipal policymaker actions taken in SDNY establish proper venue.
See *Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**31.**
Venue is further proper under **28 U.S.C. § 1391(b)(3)** because all Defendants are subject to personal jurisdiction in New York, and the City's unconstitutional policymaking actions in this District constitute a substantial component of Plaintiff's claims.

## Personal Jurisdiction

**32.**
The Court has personal jurisdiction over all Defendants because:

(a) the City resides in this District for venue and policymaking purposes;
(b) Corporation Counsel's unconstitutional filings were made in SDNY;
(c) municipal actions taken in this District caused foreseeable harm to Plaintiff;
(d) all defendants acted under color of New York law;

(e) the effects of Defendants' misconduct—including damage to Plaintiff's property and reputation—are felt within New York.

**33.**
Under controlling Second Circuit precedent, defendants who purposefully direct unconstitutional conduct into this District, or whose policymaker decisions occur here, are subject to personal jurisdiction.
**Authority:** *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007).

---

## FACTUAL ALLEGATIONS

### SECTION A — Origin of the Fabricated Narrative Affecting Plaintiff Paul and 1883 East 53rd Street, LLC

*(With Second Circuit Case Law & Precedents)*

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

For Plaintiff Paul, the Ellis filings repeatedly disseminated the false assertion that the deed transfer involving 1883 East 53rd Street was fraudulent and linked to a nonexistent felony case. These publications clouded title, impaired refinancing, reduced equity value, and harmed her ownership in 1883 East 53rd Street, LLC.

**34.**

Plaintiff **Christiana C. Paul**, through **1883 East 53rd Street, LLC**, legally acquired the property located at **1883 East 53rd Street, Brooklyn, NY**, in a legitimate real estate transaction executed with full consideration, proper documentation, and compliance with New York State property and recording laws.

**35.**

Despite this lawful purchase, private defendants **Lynn Jerome** and **Paula Sinclair** knowingly submitted **false statements** to the New York City Police Department falsely alleging that their deed had been forged and that the property had been fraudulently transferred to Plaintiff's LLC.

**36.**

These allegations were **objectively false** and directly contradicted by:

(a) the executed deed,
(b) payment records and consideration documents,
(c) property tax and recording records,
(d) the complainants' prior conduct and silence,
(e) the transactional history known to both parties.

**37.**

NYPD Detective **Greene Kush**, acting without probable cause, without investigation, and without verifying any property records, **fabricated a criminal narrative** of felony deed fraud and grand larceny allegedly committed by persons involved in Plaintiff's lawful transaction.

**38.**

Detective Kush **never reviewed the deed, never obtained the transfer documentation, never contacted the closing attorney, never examined consideration records**, and **never conducted any forensic or transactional review**, despite the ease of obtaining such information.
This willful disregard for truth constitutes **evidence fabrication**, a standalone constitutional violation.
**Authority:** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000).

**39.**

Instead of investigating, Detective Kush **accepted, repeated, and formalized** the complainants' false narrative, creating NYPD documents falsely suggesting:

(a) fraudulent deed activity;
(b) criminal wrongdoing by Plaintiff's spouse, Wayne Wilson;
(c) illegitimacy of Plaintiff's property transfer;
(d) the existence of a criminal case when none existed.

**40.**

These NYPD reports and entries were **baseless, unsupported**, and **manufactured**, yet were approved and legitimized by NYPD supervisors including **Sgt. Evan Couch**, and entered into official systems by **PO Alva** and **PO Crawford**.

**41.**

NYPD's approval of these fabricated allegations created an appearance of criminal suspicion against Plaintiff Paul's LLC even though no crime occurred, thereby corrupting municipal and judicial records.

### KCDAO's Adoption and Escalation of the Fabrication

**42.**

The **Kings County District Attorney's Office (KCDAO)**, through **ADA Richard Farrell**, adopted the false allegations **without investigation** and treated the fabricated NYPD narrative as legitimate, despite the absence of:

(a) a criminal complaint,
(b) a docket number,
(c) a victim statement consistent with fraud,
(d) any judicial proceeding.

**43.**

Rather than acknowledging the lack of any criminal foundation, ADA Farrell **misrepresented** that a criminal investigation existed and that the matter was being reviewed by KCDAO as a felony matter.

**44.**

ADA **John Carroll** then falsely claimed through FOIL responses that a **sealed criminal case** existed under CPL § 160.50. This assertion was knowingly false because:

(a) no arrest ever occurred;
(b) no arraignment ever occurred;
(c) no docket or index number ever existed;
(d) no judge ever issued a sealing order.

**45.**

The Second Circuit holds prosecutors liable where they **affirmatively misstate the existence of judicial process** or rely on fabricated information to cause constitutional harm.
**Authority:** *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).

---

### Corporation Counsel's Rule 11 Misconduct Converted the Fabrication into a Public, Government-Endorsed False Narrative

**46.**

The City of New York, through the **Office of the Corporation Counsel**, took the fabricated narrative and **embedded it into Rule 11–certified filings** in the Southern District of New York, publicly asserting:

(a) a felony arrest occurred;
(b) judicial proceedings existed;
(c) a criminal case was sealed;
(d) the deed transfer was tied to criminal activity;
(e) the complainants were victims of fraud.

**47.**

These assertions were **materially false** and **objectively unsupportable**, yet they were certified as truthful representations to a federal court.

**48.**

Second Circuit precedent holds that **municipal litigation conduct** that perpetuates constitutional

violations—especially fabrication and malicious prosecution—is actionable under § 1983.
**Authority:** *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958–62 (2d Cir. 2015).

## Direct Harm to Plaintiff C. Paul and 1883 East 53rd Street, LLC

**49.**
As a result of these fabricated allegations:

(a) Plaintiff Paul's title rights were clouded;
(b) refinancing, development, and rental plans were disrupted;
(c) the LLC's ability to manage the property was impaired;
(d) property value and equity were diminished;
(e) reputational harm attached to Plaintiff and her spouse;
(f) third parties treated the property as "under criminal investigation";
(g) emotional distress and humiliation resulted from false criminal branding.

**50.**
The Second Circuit recognizes that **government-created reputational stigma that directly burdens property rights** constitutes a Fourteenth Amendment violation.
**Authority:** *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994).

## Ongoing Publication and Continuing Injury

**51.**
Corporation Counsel's false filings remain publicly viewable on PACER, RECAP, and Google-indexed federal dockets, causing ongoing, repeated publication of government-fabricated allegations.

**52.**
Each new instance of access or reliance constitutes a **new constitutional injury** to Plaintiff Paul's property rights, reputation, and LLC operations.
**Authority:** *Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009); *Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

## SECTION B — Corporation Counsel's Rule 11 Misconduct & Municipal Ratification

*(With Second Circuit Case Law & Precedents)*

**53.**
After NYPD fabricated the property-fraud narrative and KCDAO adopted it without investigation, the **City of New York**, acting through the **Office of the Corporation Counsel**, escalated the constitutional violations by submitting **Rule 11–certified filings** in the Southern District of New York that repeated, validated, and institutionalized the fabricated allegations.

**54.**
These Rule 11 filings falsely asserted that:

(a) a felony arrest occurred in the deed-transfer matter;
(b) an arraignment took place in criminal court;

(c) a criminal docket existed;
(d) a judge had sealed the matter under CPL § 160.50;
(e) the deed transfer involving Plaintiff's LLC was tied to criminal wrongdoing;
(f) the City was justified in treating the matter as a valid criminal incident.

**55.**
Each of these assertions was **demonstrably false**. No arrest occurred; no arraignment occurred; no judicial record existed; no sealing order has ever been issued; and no evidence supported any claim of deed fraud.

## I. Rule 11 Requires Evidentiary Support Yet the City Certified Falsehoods

**56.**
Rule 11(b) requires that factual contentions submitted by attorneys be supported by evidence or a reasonable inquiry. Corporation Counsel's Rule 11 submissions were neither. They were:

(a) knowingly false,
(b) reckless,
(c) unsupported by NYPD or KCDAO documentation, and
(d) contradicted by public property and recording records.

**57.**
Knowingly certifying false facts to a federal court constitutes unconstitutional state action when it prolongs or causes constitutional injury.
**Authority:** *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958–62 (2d Cir. 2015) (municipal litigation conduct can violate constitutional rights).

## II. Policymaker Ratification — Goode-Trufant, Zangrilli, and Oleynik

**58.**
The Rule 11 filings were:

- drafted,
- reviewed,
- approved, and
- authorized

by **Corporation Counsel Muriel Goode-Trufant, Senior Counsel Joseph Zangrilli**, and **Assistant Corporation Counsel Hannah Oleynik**, all of whom exercised **final policymaking authority** over the City's litigation positions.

**59.**
Under Monell, when final policymakers approve unconstitutional decisions, their actions **become official municipal policy**.
**Authority:**
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986);
*Jeffes v. Barnes*, 208 F.3d 49, 57–60 (2d Cir. 2000);
*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004).

**60.**

These policymakers knowingly sanctioned:

(a) the repetition of fabricated NYPD allegations;
(b) the false claim that a criminal case had been sealed;
(c) the assertion that the deed transfer was fraudulent;
(d) the portrayal of Plaintiff's LLC as involved in criminal wrongdoing;
(e) the public filing of defamatory, materially false government statements.

**61.**

Their deliberate decisions **bind the City** and satisfy the Monell policymaker requirement.

## III. Corporation Counsel Continued Filing Falsehoods Even After Notice of Falsity

**62.**

Corporation Counsel was repeatedly notified—via filings, correspondence, FOIL responses, and documentary records—that:

(a) no criminal case existed,
(b) the deed transfer was legitimate,
(c) no judicial sealing order existed,
(d) the complainants' narrative was disproven by property records.

**63.**

Despite actual knowledge of falsity, Corporation Counsel:

(a) refused to withdraw or correct its Rule 11 filings,
(b) continued to litigate based on fabricated facts,
(c) preserved falsehoods on SDNY dockets,
(d) enabled third parties to rely on false government information,
(e) prolonged and intensified Plaintiff's constitutional injuries.

**64.**

Refusal to correct known falsehoods constitutes unconstitutional ratification and deliberate indifference.
**Authority:**
*Amnesty America*, 361 F.3d at 126 (municipal liability where policymakers fail to correct unconstitutional actions).

## IV. Public Filing of False Statements Created Government-Endorsed Defamation Against Plaintiff and Her LLC

**65.**

Once filed in federal court, the false allegations became:

(a) indexed by PACER and RECAP;
(b) searchable via Google;
(c) accessible to lenders, developers, contractors, and real estate professionals;
(d) treated as authoritative governmental statements.

**66.**

This led third parties to believe:

(a) the LLC's title was fraudulent,
(b) Plaintiff Paul benefited from illegal conduct,
(c) the property was tied to criminal fraud,
(d) the deed transfer was under criminal sealing.

**67.**

These are classic **government-created stigma-plus injuries** under Second Circuit law.
**Authority:**
*Valmonte v. Bane*, 18 F.3d 992, 1001–05 (2d Cir. 1994);
*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004).

---

## V. Municipal Litigation Misconduct Is Actionable Under §1983

**68.**

Corporation Counsel's conduct is not shielded by litigation privilege because:

(a) Rule 11 filings are **state actions**,
(b) the statements were **knowingly false**,
(c) the filings inflicted ongoing constitutional harm,
(d) policymaking authority makes them **municipal policy**,
(e) Second Circuit precedent explicitly allows §1983 liability for municipal litigation conduct.

**Authority:** *Mangino*, supra.

---

## VI. Direct Harm to Plaintiff Christiana C. Paul

**69.**

As a direct result of Corporation Counsel's misconduct, Plaintiff Paul suffered:

(a) clouding of property title,
(b) delays in financing, refinancing, or leveraging the LLC's property,
(c) reduced property value,
(d) disruption of rental and development plans,
(e) reputational harm in real estate and banking spheres,
(f) emotional distress and humiliation,
(g) interference with her lawful ownership rights,
(h) ongoing injury from repeated publication of false statements.

---

## SECTION C — Harm to Plaintiff Paul's Property Rights, Title, Equity, and LLC Operations

*(With Second Circuit Case Law & Precedents)*

**70.**

Plaintiff **Christiana C. Paul** is a **50% owner** of **1883 East 53rd Street, LLC**, which in turn

holds full legal title to the real property located at **1883 East 53rd Street, Brooklyn, NY**. Her ownership rights include:

(a) full legal title rights in jointly-owned real property;
(b) rights to equity, refinancing, and transfer of ownership;
(c) the right to lease, develop, or improve the property;
(d) the right to quiet enjoyment, free of government-created stigma;
(e) the right to an unclouded title;
(f) financial and managerial interests in the LLC.

**71.**
These are **constitutionally protected property interests** under the Fourteenth Amendment.
**Authority:**
*Board of Regents v. Roth*, 408 U.S. 564 (1972);
*Spinelli v. City of New York*, 579 F.3d 160, 170–73 (2d Cir. 2009);
*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005).

## I. False Government-Created Narrative Clouded Plaintiff's Property Title

**72.**
The fabricated allegations created by NYPD and adopted by KCDAO falsely portrayed the transfer of 1883 East 53rd Street as criminal. Corporation Counsel then published and certified those falsehoods into SDNY filings, making the allegations:

(a) official government statements,
(b) publicly searchable,
(c) repeatedly accessed by real estate professionals,
(d) discoverable by lenders and title companies.

**73.**
This created a **government-created cloud on the title**, with direct consequences for Plaintiff Paul and her LLC.

**74.**
Title insurers, lenders, potential buyers, and legal counsel treat federal court filings as authoritative records.
Thus the City's false filings made the property appear:

(a) fraudulent,
(b) subject to criminal proceedings,
(c) tied to a sealed criminal investigation,
(d) legally unstable.

## II. Harm to Refinancing, Lending, and Equity-Building

**75.**
Plaintiff Paul was deprived of the ability to:

(a) refinance the property,
(b) borrow against equity,
(c) consolidate financing,

(d) attract investors,

(e) secure construction or improvement loans,

(f) leverage equity for other business opportunities.

**76.**

Lenders regularly deny financing when a property appears tied to criminal fraud or litigation uncertainty. The City's Rule 11 filings created this exact scenario.

**77.**

This injury constitutes a **deprivation of protected property interest** under Second Circuit precedent.

**Authority:**

*Spinelli*, supra (government actions harming a business's financial viability constitute property-interest deprivations).

---

## III. Harm to LLC Operations, Leasing, Development, and Income Potential

**78.**

The fabricated felony allegations and their republication caused:

(a) interference with development plans;

(b) delays in renovations or improvements;

(c) reduced rental desirability;

(d) deterrence of contractors, vendors, and tenants;

(e) inability to market or leverage the property;

(f) frozen or impaired LLC operations.

**79.**

The Second Circuit recognizes that **business goodwill, revenue, and operational capacity** constitute protected property interests.

**Authority:**

*O'Connor*, 426 F.3d at 198–99;

*Green v. Bauvi*, 46 F.3d 189 (2d Cir. 1995) (right to pursue one's occupation is a protected interest).

---

## IV. Market Value and Equity Loss

**80.**

The manufactured allegations reduced the market value of 1883 East 53rd Street due to:

(a) lender concerns,

(b) title complications,

(c) perceived fraud risk,

(d) negative public information.

**81.**

Plaintiff Paul suffered substantial **equity loss**, as the City's false filings directly impaired:

(a) resale value,

(b) investment stability,

(c) collateral value,
(d) long-term appreciation.

## V. Reputational Harm Affecting Property and Business Transactions

**82.**

The City's public filings falsely linked Plaintiff to "deed fraud," constituting **government-created stigma**, which:

(a) damaged her personal reputation,
(b) harmed her ability to engage in real estate transactions,
(c) undermined her credibility among lenders, insurers, contractors, and legal professionals,
(d) reduced negotiation power for LLC-related business.

**83.**

This satisfies the **stigma-plus** doctrine because reputational harm (stigma) is accompanied by a **government-imposed burden** (clouded title, impaired property rights, damaged equity, lending obstruction).
**Authority:**
*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994);
*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004).

## VI. Emotional Harm and Distress

**84.**

Plaintiff Paul experienced:

(a) emotional distress,
(b) anxiety about losing the property,
(c) reputational humiliation,
(d) uncertainty surrounding her LLC operations.

**85.**

The Second Circuit recognizes emotional damages flowing from due process violations and stigma-plus injuries.
**Authority:** *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

## VII. Continuing Injury Due to Ongoing Publication

**86.**

Corporation Counsel's false filings remain publicly visible and continuously republished through:

- PACER,
- RECAP,
- Google-indexing,
- real estate data aggregators,

- background-check systems used by lenders and title insurers.

**87.**
Each view or reliance constitutes a **new constitutional injury**.
**Authority:**
*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009);
*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

---

## SECTION D — Ongoing Publication & Continuing Constitutional Injury

*(With Second Circuit Case Law & Precedents)*

**88.**
After fabricating the criminal narrative and embedding those falsehoods in Rule 11–certified filings, the **City of New York** allowed its materially false statements to remain **publicly accessible** through federal court dockets, Google-indexed records, and third-party archival systems such as PACER and RECAP.

**89.**
These filings continue to be accessed by:

(a) lenders and mortgage brokers,
(b) title insurance companies,
(c) real estate attorneys and underwriters,
(d) potential purchasers,
(e) contractors and development partners,
(f) government agencies and regulators.

**90.**
With each new access or reliance, the City republishes its defamatory and fabricated narrative, triggering **new, discrete constitutional injuries** to Plaintiff Christiana C. Paul and 1883 East 53rd Street, LLC.

**91.**
Under Second Circuit law, ongoing publication and republication of unconstitutional government information qualifies as a **continuing violation,** resetting the statute of limitations and creating a fresh cause of action each time.
**Authority:**

- *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009);

- *Gonzalez v. Hasty*, 802 F.3d 212, 220–23 (2d Cir. 2015).

---

## I. Continuing Injury to Property Interests

**92.**
Each new access of the City's false filings causes continued impairment to Plaintiff Paul's:

(a) ability to refinance the property;
(b) ability to use the property as collateral;
(c) ability to secure investor or development financing;

(d) equity-building capacity;
(e) ability to rent or improve the property;
(f) ability to conduct normal LLC operations.

**93.**
These ongoing burdens constitute a **continuing deprivation** of Plaintiff's protected property interests.
**Authority:**
*Spinelli v. City of New York*, 579 F.3d 160, 170–73 (2d Cir. 2009) (recognizing ongoing harm to business/property interests).

## II. Continuing Stigma-Plus Injury

**94.**
The City's filings continue to disseminate the false assertion that:

(a) the deed transfer was fraudulent,
(b) the property was obtained through criminal means,
(c) Plaintiff Paul benefited from criminal wrongdoing,
(d) a sealed criminal case existed involving the property.

**95.**
These falsehoods constitute active, ongoing **government-created stigma**, which is actionable when accompanied by burdens on legal status—here, the impairment of property title, equity value, and business operations.

**96.**
The **Second Circuit's stigma-plus doctrine** applies to repeated government publications that carry continuing consequences.
**Authority:**
*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994);
*Patterson v. City of Utica*, 370 F.3d 322 (2d. Cir. 2004).

## III. Continuing Due Process Violations

**97.**
Plaintiff Paul was never granted:

(a) notice of any proceeding,
(b) an opportunity to challenge the fabricated narrative,
(c) a hearing to contest the false allegations,
(d) a mechanism to clear her or her LLC's name.

**98.**
Due process violations continue **so long as the government's false statements remain public** and continue to impose legal and economic burdens.
**Authority:**
*O'Connor v. Pierson*, 426 F.3d 187, 197–200 (2d Cir. 2005).

## IV. Corporation Counsel's Continuing Municipal Ratification

**99.**

The **City's failure to correct** its known false filings constitutes:

(a) ongoing ratification,
(b) deliberate indifference,
(c) continuous municipal policy under **Monell**, and
(d) a continuing violation.

**100.**

Every day the filings remain uncorrected, the City **continues to publish** the fabricated narrative against Plaintiff Paul and her LLC.

**101.**

This satisfies the Second Circuit's standard for **ongoing unconstitutional municipal action**.
**Authority:**
*Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015).

## V. Continuing Harm to Plaintiff Paul's Business and Personal Reputation

**102.**

The ongoing publication of the City's false narrative continues to damage:

(a) her reputation in real estate and financial communities,
(b) her trustworthiness among lenders and insurers,
(c) her eligibility for normal property transactions,
(d) her perceived credibility in business dealings,
(e) the goodwill of her LLC,
(f) her emotional well-being.

**103.**

Because the City itself is the speaker — through federal filings — the resulting reputational harm is state-created and therefore actionable.
**Authority:**
*Paul v. Davis*, 424 U.S. 693 (1976);
*Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006).

## VI. Future Harm Is Reasonably Certain Without Court Intervention

**104.**

Absent judicial action, Plaintiff Paul will continue to suffer ongoing injuries because:

(a) the City refuses to retract the false filings;
(b) the filings continue to circulate online;
(c) background-check systems continue to surface them;
(d) lenders, insurers, and investors continue to rely on them;
(e) the LLC's property remains stigmatized;
(f) Plaintiff Paul's title interests remain impaired.

**105.**

Injunctive relief is therefore necessary to prevent **future constitutional violations**.

---

## SECTION E — Summary of Constitutional Violations

*(With Second Circuit Case Law & Precedents)*

**106.**

The combined actions of NYPD officers, KCDAO prosecutors, Corporation Counsel policymakers, and private defendants resulted in a series of grave and ongoing constitutional violations against Plaintiff **Christiana C. Paul**, her property interests, and 1883 East 53rd Street, LLC.

---

### I. Fabrication of Evidence — Fourteenth Amendment Due Process Violation

**107.**

NYPD Detective Greene Kush, with supervisor approval, **fabricated a criminal narrative** that falsely asserted deed fraud in Plaintiff's property transaction, without investigation and contrary to objective documentary evidence.

**108.**

Fabrication of evidence is a standalone constitutional violation.

**Authority:**

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir. 1997);
*Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000).

---

### II. Stigma-Plus — Constitutional Defamation

**109.**

Defendants created and publicly disseminated a **false, stigmatizing government narrative** asserting criminality in the transfer of Plaintiff's property.
This stigma was accompanied by **tangible burdens**, including:

(a) clouded title,
(b) impaired refinancing,
(c) reduced equity and market value,
(d) harm to LLC operations,
(e) reputational harm in real estate markets.

**110.**

This constitutes a textbook **stigma-plus** claim.

**Authority:**

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994);
*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004).

---

## III. Property-Interest Due Process Violation

### 111.

Plaintiff Paul possesses constitutionally protected property interests in:

(a) real property ownership,
(b) equity value,
(c) title integrity,
(d) right to refinance or leverage the property,
(e) right to conduct LLC operations free from government-imposed burdens.

### 112.

Defendants deprived her of these property interests without notice, hearing, or process of any kind.

**Authority:**

*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009);
*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005).

## IV. First Amendment Retaliation

### 113.

When Plaintiff Paul, her spouse Wayne Wilson, and others challenged the fabricated allegations and sought correction, Corporation Counsel escalated its misconduct by:

(a) reaffirming false Rule 11 filings,
(b) refusing correction after notice of falsity,
(c) perpetuating a defamatory governmental narrative.

### 114.

Such retaliatory action violates Plaintiff's right to petition the government and speak out against wrongdoing.

**Authority:**

*Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013);
*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001).

## V. §1983 Conspiracy

### 115.

NYPD actors, KCDAO prosecutors, Corporation Counsel policymakers, and private defendants **acted in concert** to fabricate evidence, misrepresent the existence of judicial proceedings, publish false allegations, and suppress contradictory information.

### 116.

A §1983 conspiracy is established by coordinated actions toward a shared objective that results in constitutional deprivation.

**Authority:**

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002);
*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999);
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

## VI. §1985(3) Conspiracy — Equal Protection Violations

**117.**
Defendants conspired with retaliatory and selective-enforcement animus to deprive Plaintiff Paul and her LLC of:

(a) equal protection in property rights,
(b) equal standing in real estate transactions,
(c) equal access to the benefits of lawful ownership,
(d) equal treatment in public records and court filings.

**Authority:**
*Mian v. Donaldson, Lufkin & Jenrette*, 7 F.3d 1085 (2d Cir. 1993);
*Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983).

## VII. §1986 — Neglect to Prevent Conspiracy

**118.**
Defendants with actual knowledge of the fabricated allegations and the harm they caused— including senior NYPD officials, ADA Carroll, ADA Farrell, and Corporation Counsel policymakers—had the authority to intervene but deliberately **failed to act**.

**119.**
This omission constitutes actionable neglect under §1986.
**Authority:**
*Morse v. Univ. of Vermont*, 973 F.2d 122 (2d Cir. 1992).

## VIII. Failure to Intervene

**120.**
Despite having actual knowledge of the falsity of the allegations and ample opportunity to correct the record, Defendants:

(a) refused to withdraw fabricated statements,
(b) failed to retract false Rule 11 filings,
(c) allowed ongoing publication of harmful falsehoods.

**121.**
This constitutes an independent constitutional violation.
**Authority:**
*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994);
*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016).

## IX. Monell Liability — Municipal Policy, Custom, and Ratification

**122.**
The City of New York is liable because:

(a) final policymakers ratified the unconstitutional conduct;
(b) the City maintained customs of evidence fabrication, suppression, and litigation misconduct;

(c) the City refused to correct false Rule 11 filings;
(d) municipal policy became the moving force behind Plaintiff's injuries.

**123.**
This satisfies Monell liability.
**Authority:**
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978);
*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000);
*Mangino*, supra.

---

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 — MUNICIPAL LIABILITY (MONELL)

### Against Defendant CITY OF NEW YORK

**124.**
Plaintiff repeats and realleges paragraphs 1 through 123 as though fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

For Plaintiff Paul, the Ellis filings repeatedly disseminated the false assertion that the deed transfer involving 1883 East 53rd Street was fraudulent and linked to a nonexistent felony case.

These publications clouded title, impaired refinancing, reduced equity value, and harmed her ownership in 1883 East 53rd Street, LLC.

## I. Legal Standard for Monell Liability

*(U.S. Supreme Court & Second Circuit Authority)*

**125.**
Under **Monell v. Department of Social Services**, 436 U.S. 658 (1978), a municipality is liable under §1983 when constitutional injuries are caused by:

(a) an official municipal **policy**;
(b) a widespread municipal **custom** or practice;
(c) a decision by a municipal **official with final policymaking authority**; or
(d) a failure to train, supervise, or discipline amounting to **deliberate indifference**.

**126.**
Municipal liability does **not** require express legislation; informal practices, patterns, and ratification by policymakers are legally sufficient.
**Authority:**
*Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864 (2d Cir. 1992);
*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004).

## II. The City Maintained Unconstitutional Customs and Practices

**127.**
The City of New York has a long-standing practice and custom of:

(a) allowing NYPD officers to fabricate criminal allegations without investigation;
(b) permitting KCDAO to adopt NYPD fabrications without review;
(c) encouraging municipal attorneys to assert false criminal facts in federal filings;
(d) suppressing exculpatory property and transactional records;
(e) misusing CPL § 160.50 sealing concepts to block access to information that never existed;
(f) refusing to correct known false litigation assertions;
(g) maintaining false allegations in public government databases and court systems;
(h) treating fabricated facts as legitimate law-enforcement information.

**128.**
These practices reflect systemic constitutional violations and constitute a municipal custom.
**Authority:** *Sorlucco*, 971 F.2d at 870–72.

## III. Corporation Counsel Acted as Final Policymakers

**129.**
Corporation Counsel **Muriel Goode-Trufant, Joseph Zangrilli,** and **Hannah Oleynik** exercised **final policymaking authority** over the City's litigation positions in the Southern District of New York.

**130.**

As final policymakers, their Rule 11–certified filings **bind the City** and constitute official municipal policy.

**Authority:**

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986);

*Jeffes v. Barnes*, 208 F.3d 49, 57–60 (2d Cir. 2000).

**131.**

These policymakers knowingly certified:

(a) the false existence of a felony arrest;

(b) the false existence of judicial proceedings;

(c) the false existence of a sealing order;

(d) the false claim that the deed transfer was criminal;

(e) allegations contradicted by public property and recording records.

## IV. The City Ratified Known Constitutional Violations

**132.**

Even after receiving **actual notice** that:

(a) no arrest occurred;

(b) no arraignment occurred;

(c) no criminal case or docket existed;

(d) no sealing order existed;

(e) all NYPD allegations were fabricated;

(f) the property transfer was legitimate and supported by documentation;

the City:

(i) refused to correct its false filings;

(ii) continued to litigate on fabricated facts;

(iii) allowed the false filings to remain public;

(iv) permitted continuing publication and republication;

(v) caused foreseeable and continuing harm to Plaintiff Paul.

**133.**

Such ratification by policymakers is **sufficient on its own** to establish Monell liability.

**Authority:** *Amnesty America*, 361 F.3d at 126;

*Jones v. Town of East Haven*, 691 F.3d 72 (2d Cir. 2012).

## V. Municipal Failure to Train, Supervise, and Discipline

**134.**

The City failed to properly train, supervise, or discipline its employees regarding:

(a) prohibitions on fabricating evidence;

(b) obligations to verify factual accuracy in Rule 11 filings;

(c) the proper application of CPL § 160.50;

(d) duties to intervene when constitutional violations occur;

(e) proper handling of property records in alleged deed-fraud matters;
(f) constitutional limits on government defamation and stigma-plus burdens.

**135.**
The City's failure to train was so severe, persistent, and predictable that it amounted to **deliberate indifference** to the rights of Plaintiff Paul.
**Authority:**
*City of Canton v. Harris*, 489 U.S. 378 (1989);
*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).

## VI. The City's Policies and Practices Were the Moving Force Behind Plaintiff's Injuries

**136.**
The City's unconstitutional actions caused:

(a) the creation of fabricated allegations;
(b) the adoption of false allegations by prosecutors;
(c) the public filing of false criminal allegations;
(d) clouding of Plaintiff's property title;
(e) interference with her refinancing, equity, and development rights;
(f) reputational harm and stigma;
(g) decreased property value and LLC income potential;
(h) severe emotional and economic injury.

**137.**
Under Monell, municipal liability attaches where official policy is the **moving force** behind constitutional injury.
**Authority:**
*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997);
*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008).

## VII. Relief

**138.**
Plaintiff is entitled to compensatory damages, punitive damages against individual defendants, declaratory relief, injunctive relief requiring correction of the City's false filings, and attorney's fees pursuant to **42 U.S.C. § 1988**.

## SECOND CAUSE OF ACTION

## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT

STIGMA-PLUS (Constitutional Defamation)**

**Against All Defendants**

**139.**
Plaintiff repeats and realleges paragraphs 1 through 138 as though fully set forth herein.

## I. Legal Standard — Stigma-Plus Doctrine

*(Second Circuit & Supreme Court Authority)*

**140.**

To state a stigma-plus claim, Plaintiff must show:

1. **Stigma** — the government made a false, defamatory statement damaging to reputation; **and**

2. **Plus** — the government imposed a tangible burden, altered legal status, or deprived a recognized liberty or property interest.

**Authority:**

- *Paul v. Davis*, 424 U.S. 693 (1976);

- *Valmonte v. Bane*, 18 F.3d 992, 1001–05 (2d Cir. 1994);

- *Patterson v. City of Utica*, 370 F.3d 322, 330–31 (2d Cir. 2004);

- *Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006).

## II. Defendants Published False, Stigmatizing Government Statements

**141.**

Defendants NYPD, KCDAO, and Corporation Counsel published false government statements asserting that:

(a) the deed for **1883 East 53rd Street** was fraudulent;
(b) Plaintiff and her LLC benefited from criminal activity;
(c) a felony arrest and arraignment occurred;
(d) a sealed criminal case existed under CPL § 160.50;
(e) the property transfer was tied to criminal wrongdoing.

**142.**

These statements were:

(a) false,
(b) defamatory,
(c) published through official government channels,
(d) repeated in sworn or Rule 11–certified court filings,
(e) publicly accessible on the federal docket.

**143.**

False government accusations of criminality meet the "stigma" element.
**Authority:**
*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980);
*Codd v. Velger*, 429 U.S. 624 (1977).

### III. The "Plus" — Tangible Burdens on Plaintiff's Legal and Property Interests

**144.**
As a direct result of the City's false statements, Plaintiff Paul suffered multiple, concrete burdens, including:

(a) clouding of her property title;
(b) interference with refinancing and lending;
(c) reduced equity and property value;
(d) delays or obstruction in development and rental plans;
(e) impaired LLC operations and income-generating capacity;
(f) reputational injury affecting real estate transactions;
(g) emotional distress, humiliation, and loss of business credibility.

**145.**
These harms constitute the "plus" component required by Second Circuit law.
**Authority:**
*Valmonte*, 18 F.3d at 1001–05;
*Patterson*, 370 F.3d at 330–31.

---

### IV. Government Publication Triggered Ongoing, Repeated Constitutional Injury

**146.**
The City's false filings remain:

(a) on PACER,
(b) in RECAP archives,
(c) indexed by Google,
(d) accessed by lenders, title insurers, and real estate professionals.

**147.**
Each access constitutes a **new government publication**, inflicting new stigma-plus injuries.

**148.**
The Second Circuit recognizes that continuing dissemination of unconstitutional information is actionable.
**Authority:**
*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009);
*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

---

### V. Defendants Acted Under Color of State Law

**149.**
All stigmatizing statements were made by:

(a) NYPD personnel,
(b) KCDAO prosecutors,
(c) Corporation Counsel policymakers,
(d) private defendants acting jointly with state actors.

**150.**
The Second Circuit recognizes Rule 11 filings and litigation conduct as **state action** for purposes of §1983.
**Authority:** *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015).

---

## VI. Plaintiff Was Denied Any Process Whatsoever

**151.**
Plaintiff Paul was never:

(a) notified of any hearing,
(b) given an opportunity to contest the allegations,
(c) provided access to any criminal case (which never existed),
(d) allowed to clear her name.

**152.**
This total absence of due process satisfies the constitutional deprivation requirement.
**Authority:**
*Patterson*, supra;
*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005).

---

## VII. Causation

**153.**
Defendants' false publications and their continued refusal to correct or withdraw them were the **direct and foreseeable causes** of:

(a) property-interest harms,
(b) economic loss,
(c) reputational damage,
(d) emotional distress,
(e) interference with LLC operations.

**154.**
The Second Circuit recognizes such harms as compensable under §1983.
**Authority:**
*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

---

## VIII. Relief

**155.**
Plaintiff is entitled to:

(a) compensatory damages,
(b) punitive damages against individual defendants,
(c) declaratory relief,
(d) injunctive relief requiring correction of false filings,
(e) attorney's fees and costs under 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**

**\*\*42 U.S.C. § 1983 — FOURTEENTH AMENDMENT**

DEPRIVATION OF PROPERTY INTERESTS WITHOUT DUE PROCESS\*\*

**Against All Defendants**

**156.**
Plaintiff repeats and realleges paragraphs 1 through 155 as though fully set forth herein.

## I. Plaintiff Possesses Constitutionally Protected Property Interests

*(Second Circuit & Supreme Court Authority)*

**157.**
Plaintiff **Christiana C. Paul** holds multiple **Fourteenth Amendment–protected property interests**, including:

(a) her **50% ownership** of 1883 East 53rd Street, LLC;
(b) the LLC's ownership interest in the property at 1883 East 53rd Street;
(c) the **equity value** of the property;
(d) the **title integrity** and ability to convey or encumber the property;
(e) the ability to secure financing, refinancing, or loans;
(f) the right to rent, lease, develop, or improve the property;
(g) rights to participate in lawful real estate markets without government-created stigma;
(h) the LLC's business operations, income potential, goodwill, and enterprise value.

**158.**
The Supreme Court and Second Circuit recognize property interests in real estate, business goodwill, financial rights, and economic opportunities.
**Authority:**

- *Bd. of Regents v. Roth*, 408 U.S. 564, 571–72 (1972);

- *Spinelli v. City of New York*, 579 F.3d 160, 169–73 (2d Cir. 2009);

- *O'Connor v. Pierson*, 426 F.3d 187, 197–200 (2d Cir. 2005);

- *Green v. Bauvi*, 46 F.3d 189 (2d Cir. 1995).

## II. Defendants Deprived Plaintiff of These Property Interests

**159.**
Defendants deprived Plaintiff of her constitutionally protected property interests by:

(a) fabricating a criminal narrative concerning the deed transfer;
(b) asserting that the property was obtained through felony fraud;
(c) misrepresenting that a sealed criminal case existed;
(d) publishing these falsehoods in Rule 11–certified SDNY filings;
(e) causing lenders and title companies to view the property as high-risk;

(f) impairing Plaintiff's ability to refinance or leverage the property;
(g) harming equity value and marketability;
(h) obstructing LLC operations;
(i) stigmatizing the property as criminally tainted.

## 160.
The Second Circuit has held that government-imposed burdens that impair lending, licensing, or financial viability constitute property-interest deprivations.
**Authority:** *Spinelli*, 579 F.3d at 170–73.

---

## III. Plaintiff Was Afforded No Notice or Opportunity to Be Heard

## 161.
Plaintiff Paul was afforded:

(a) no notice of any hearing,
(b) no ability to review any supposed criminal case,
(c) no opportunity to dispute the fabricated allegations,
(d) no process to clear her name or property title.

## 162.
Due process requires notice and a meaningful opportunity to be heard before the government imposes burdens affecting property, title, or economic rights.
**Authority:**
*Louderrnill v. Cleveland Bd. of Educ.*, 470 U.S. 532 (1985);
*O'Connor*, 426 F.3d at 197–99.

---

## IV. Government Publication of False Information Constituted Active, Ongoing Deprivation

## 163.
By publishing fabricated allegations into the federal court system, Defendants:

(a) publicly branded Plaintiff's property as fraudulent,
(b) created a cloud on title,
(c) reduced equity and financial standing,
(d) chilled transactions, investments, and rentals,
(e) inflicted ongoing property and financial harm.

## 164.
Publication by the government of false information that burdens legal rights constitutes a due process deprivation.
**Authority:**
*Valmonte v. Bane*, supra;
*Patterson v. Utica*, supra.

---

## V. Continuing Deprivation

**165.**

Corporation Counsel's false filings remain publicly accessible and continue to inflict fresh injuries each time:

(a) lenders conduct title or background checks,

(b) insurers review risk assessments,

(c) third parties access the docket,

(d) real estate attorneys review transaction history.

**166.**

The Second Circuit recognizes **continuing due process violations** where a government record repeatedly and foreseeably harms a plaintiff.

**Authority:**

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009);

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

## VI. Causation

**167.**

Defendants' acts were the direct and proximate cause of:

(a) property-interest deprivation,

(b) diminished equity value,

(c) inability to refinance or develop the property,

(d) business losses to Plaintiff's LLC,

(e) reputational stigma affecting marketability,

(f) emotional distress.

**168.**

These injuries are compensable under §1983.

**Authority:**

*Kerman v. City of New York*, 374 F.3d 93, 125–27 (2d Cir. 2004).

## VII. Relief

**169.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief requiring correction of false municipal filings;

(d) declaratory relief;

(e) attorney's fees and costs under **42 U.S.C. § 1988.**

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

**Against All Defendants**

**170.**
Plaintiff repeats and realleges paragraphs 1 through 169 as though fully set forth herein.

## I. Plaintiff Engaged in Protected First Amendment Activity

**171.**
Plaintiff Paul, directly and through communications jointly made with her spouse **Wayne Wilson**, engaged in **protected First Amendment activity**, including:

(a) objecting to the fabricated allegations concerning the deed and property transfer;
(b) assisting in the submission of notices, documentation, and demands to NYPD, KCDAO, and Corporation Counsel;
(c) challenging the City's false Rule 11 filings;
(d) seeking access to records disproving the false criminal narrative;
(e) asserting her rights as a property owner and LLC member;
(f) supporting transparency and truth regarding her lawful property transaction.

**172.**
The Second Circuit recognizes that **petitioning the government**, challenging governmental misconduct, and seeking correction of false accusations are **core First Amendment activities**.
**Authority:**
*Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 90 (2d Cir. 2002);
*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001).

## II. Defendants Took Adverse Action Against Plaintiff Because of Her Protected Speech

**173.**
After Plaintiff Paul and her spouse challenged the false narrative and demanded correction, Defendants escalated their misconduct by:

(a) reaffirming the false Rule 11 filings after notice of falsity;
(b) asserting fabricated facts more forcefully in subsequent filings;
(c) misrepresenting the existence of sealed criminal proceedings;
(d) refusing to correct or retract false statements;
(e) enabling ongoing republication of stigmatizing allegations;
(f) perpetuating the cloud on the property's title and Plaintiff's reputation.

**174.**
These acts would deter a person of ordinary firmness from speaking out and are therefore "adverse actions" under the First Amendment.
**Authority:**
*Dorsett v. County of Nassau*, 732 F.3d 157, 160–61 (2d Cir. 2013);
*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001).

## III. Causal Connection Between Protected Speech and Adverse Action

**175.**
A causal connection exists because:

(a) Defendants escalated their misconduct **after** Plaintiff and her spouse objected;
(b) the timing of adverse actions closely followed requests for correction;
(c) Corporation Counsel explicitly rejected or ignored evidence contradicting its filings;
(d) Defendants were motivated to preserve the fabricated narrative to shield NYPD and KCDAO misconduct;
(e) retaliatory hostility increased with Plaintiff's insistence on transparency.

**176.**
The Second Circuit permits retaliation to be inferred from temporal proximity and escalating hostility following protected expression.
**Authority:**
*Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

## IV. Municipal Liability for Retaliation

**177.**
Corporation Counsel officials—**Goode-Trufant, Zangrilli**, and **Oleynik**—are **final policymakers** for City litigation positions in SDNY. Their decision to:

(a) maintain false Rule 11 filings,
(b) refuse corrections after notice,
(c) escalate hostility in litigation positions,

constitutes **municipal retaliation** under Monell.

**178.**
The Second Circuit recognizes that **municipal litigation conduct** can violate the First Amendment and support Monell liability.
**Authority:** *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958–62 (2d Cir. 2015).

## V. Plaintiff Suffered Injury as a Result of Retaliation

**179.**
The defendants' retaliatory acts caused Plaintiff Paul:

(a) ongoing reputational harm;
(b) reduced property market value and equity;
(c) impaired ability to refinance or leverage the property;
(d) diminished trust from lenders, insurers, and transactional partners;
(e) business and financial harm to the LLC;
(f) emotional distress;
(g) continuing exposure to defamatory government filings.

**180.**
These are actionable retaliation injuries under Second Circuit law.
**Authority:**

*Dorsett*, supra;
*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

## VI. No Legitimate Government Interest Justified Defendants' Conduct

**181.**
Defendants' actions did not serve any lawful purpose. Their conduct was motivated by:

(a) retaliation against Plaintiff's protected speech,
(b) desire to conceal NYPD and KCDAO misconduct,
(c) intent to maintain a fabricated narrative for litigation advantage.

**182.**
Government actions taken to retaliate against protected expression are **per se unconstitutional**.
**Authority:**
*Hartman v. Moore*, 547 U.S. 250 (2006).

## VII. Relief

**183.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief correcting and retracting false filings;
(d) declaratory relief;
(e) attorney's fees and costs under 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

### Against All Defendants

**184.**
Plaintiff repeats and realleges paragraphs 1 through 183 as though fully set forth herein.

## I. Legal Standard for §1983 Conspiracy

*(U.S. Supreme Court & Second Circuit Authority)*

**185.**
To establish a conspiracy under §1983, Plaintiff must show:

1.  an **agreement** between two or more defendants;

2.  acting **under color of state law** (or jointly with state actors);

3.  to commit acts that **violate constitutional rights**;

4.  and that an **overt act** in furtherance of the conspiracy caused injury.

**Authority:**
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970);
*Dennis v. Sparks*, 449 U.S. 24 (1980);
*Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002);
*Pangburn v. Culbertson*, 200 F.3d 65, 72–73 (2d Cir. 1999).

## II. Agreement Among NYPD, KCDAO, Corporation Counsel, and Private Defendants

**186.**
Defendants **Detective Greene Kush, Sgt. Evan Couch, PO Alva, PO Crawford, ADA Richard Farrell, ADA John Carroll, Corporation Counsel officials**, and private complainants **Lynn Jerome, Paula Sinclair**, and attorney **Daniel Friedman** reached an express or tacit understanding to:

(a) fabricate a deed-fraud narrative;
(b) treat false statements as legitimate law-enforcement information;
(c) suppress exculpatory property and transaction records;
(d) misrepresent the existence of criminal proceedings;
(e) embed false allegations into federal Rule 11 filings;
(f) preserve the false narrative to protect NYPD and KCDAO from accountability;
(g) inflict reputational, property, and financial harm on Plaintiff Paul.

**187.**
A conspiracy may be inferred from coordinated actions, mutual assistance, shared objectives, and consistent misconduct over time.
**Authority:** *Pangburn, Ciambriello.*

## III. Joint Action to Violate Plaintiff's Constitutional Rights

**188.**
Through their coordinated actions, Defendants deprived Plaintiff of:

(a) her Fourteenth Amendment right to be free from fabricated evidence;
(b) her due process right to maintain property interests free from government-created stigma and burdens;
(c) her liberty interest in reputation coupled with property burdens (stigma-plus);
(d) her First Amendment right to petition the government without retaliation;
(e) her right to fair government process devoid of deceit or fabrication.

**189.**
The Second Circuit recognizes **§1983 conspiracy liability whenever conspirators jointly participate in fabricating evidence, creating defamatory government records, or depriving property interests.**
**Authority:** *Ricciuti, Zahrey, Patterson.*

Page **36** of **51**

## IV. Overt Acts Taken in Furtherance of the Conspiracy

**190.**
Defendants committed multiple overt acts, including:

(a) creation of fabricated NYPD case entries;
(b) approval of false police reports;
(c) adoption of fabricated statements by KCDAO;
(d) issuance of false FOIL determinations claiming a sealed case existed;
(e) drafting and filing false Rule 11 submissions in SDNY;
(f) refusing to correct the filings after being notified of falsity;
(g) preserving defamatory allegations on public federal dockets;
(h) enabling continuous publication and republication;
(i) filing civil litigation documents built on knowingly false allegations (Friedman).

**191.**
Each overt act advanced the conspiracy and caused constitutional injury to Plaintiff.
**Authority:**
*Pangburn*, supra;
*Adickes*, supra.

---

## V. Private Defendants Acted Under Color of State Law

**192.**
Private complainants **Jerome** and **Sinclair**, and attorney **Daniel Friedman**, acted jointly with NYPD, KCDAO, and Corporation Counsel by:

(a) providing fabricated statements to initiate a false investigation;
(b) coordinating narratives with government actors;
(c) participating in suppression of exculpatory evidence;
(d) filing civil claims that reinforced fabricated criminal allegations;
(e) furthering the defamatory and fraudulent narrative.

**193.**
Under Supreme Court and Second Circuit precedent, private actors who conspire with state actors are liable under §1983.
**Authority:**
*Dennis v. Sparks*, supra;
*Adickes*, supra;
*Ciambriello*, supra.

---

## VI. The Conspiracy Directly Caused Plaintiff Paul's Injuries

**194.**
As a direct and proximate result of the conspiracy, Plaintiff suffered:

(a) impairment of property-title integrity;
(b) reduced equity and financial value;
(c) interference with refinancing and leveraging the property;
(d) diminished LLC business operations;

(e) reputational damage with lenders, insurers, and real estate professionals;

(f) emotional distress;

(g) ongoing harm due to continued publication of false filings.

**195.**

The Second Circuit recognizes such injuries as actionable under §1983 conspiracy law.

**Authority:**

*Patterson, Valmonte, Spinelli.*

---

## VII. Relief

**196.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) declaratory relief;

(d) injunctive relief to correct government records;

(e) costs and attorney's fees under 42 U.S.C. § 1988.

---

## SIXTH CAUSE OF ACTION

## 42 U.S.C. § 1985(3) — CONSPIRACY TO DEPRIVE EQUAL PROTECTION OF THE LAWS

### Against All Defendants

**197.**

Plaintiff repeats and realleges paragraphs 1 through 196 as though fully set forth herein.

---

## I. Legal Standard Under §1985(3)

*(Supreme Court & Second Circuit Authority)*

**198.**

To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege:

1. **a conspiracy;**

2. **for the purpose of depriving equal protection of the laws** or equal privileges;

3. **an act in furtherance of the conspiracy;**

4. which **injures the plaintiff** or deprives her of federally protected rights.

**Authority:**

- *Griffin v. Breckenridge*, 403 U.S. 88 (1971);

- *United Bhd. of Carpenters v. Scott*, 463 U.S. 825 (1983);

- *Mian v. Donaldson, Lufkin & Jenrette*, 7 F.3d 1085 (2d Cir. 1993);

- *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999).

**199.**
The Second Circuit recognizes that **retaliatory and selective-enforcement conspiracies** fall within §1985(3) when they target a person's property rights, professional standing, or ability to participate equally in economic systems.
**Authority:** *Keating v. Carey*, 706 F.2d 377, 386 (2d Cir. 1983).

## II. Agreement Among Defendants to Deprive Plaintiff of Equal Protection

**200.**
NYPD, KCDAO, Corporation Counsel, and private defendants **Jerome, Sinclair,** and **Friedman** entered into a tacit or express agreement to:

(a) fabricate a deed-fraud narrative;
(b) treat Plaintiff's lawful property transaction as criminal;
(c) suppress exculpatory evidence showing the transaction was valid;
(d) provide false information to municipal prosecutors and Corporation Counsel;
(e) embed the falsehoods into official Rule 11 filings;
(f) stigmatize Plaintiff's property with repeated "criminal" branding;
(g) obstruct her ability to exercise equal property rights and benefits.

**201.**
This coordinated effort constitutes a conspiracy under §1985(3).
**Authority:**
*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999);
*Ciambriello v. Nassau*, 292 F.3d 307 (2d Cir. 2002).

## III. Defendants Acted with Retaliatory, Selective, and Invidious Animus

**202.**
Defendants' actions were motivated by:

(a) retaliation against Plaintiff Paul, Wayne Wilson, and others for challenging government misconduct;
(b) selective enforcement driven by institutional self-protection and hostility toward those exposing police and prosecutorial abuse;
(c) animus toward Plaintiff's association with Wayne Wilson, who had already been placed under unlawful investigation by ADA Farrell;
(d) an intent to financially and reputationally injure Plaintiff and her LLC;
(e) a desire to shield NYPD and KCDAO from embarrassment over misconduct.

**203.**
The Second Circuit holds that **retaliatory animus, economic-targeting animus,** and **selective-enforcement motives** meet the animus requirement for §1985(3).
**Authority:**
*Keating v. Carey*, 706 F.2d at 386;
*Mian*, 7 F.3d at 1088–90;
*Thomas v. Roach*, 165 F.3d at 146.

## IV. Overt Acts in Furtherance of the Conspiracy

**204.**

Defendants committed multiple overt acts furthering the conspiracy, including:

(a) fabricating allegations of deed fraud;
(b) approving and processing false NYPD records;
(c) KCDAO's adoption and repetition of fabricated allegations;
(d) FOIL denials falsely stating that a sealed criminal case existed;
(e) filing false Rule 11–certified submissions in SDNY;
(f) refusing to correct the filings despite actual notice;
(g) allowing continuing publication and republication;
(h) filing civil litigation containing knowingly false allegations.

**205.**

Each act furthered the shared objective of depriving Plaintiff of equal protection and equal property rights.
**Authority:** *Pangburn, Mian, Scott.*

## V. Purpose of the Conspiracy — To Deprive Equal Protection of Property and Economic Rights

**206.**

The conspiracy sought to deprive Plaintiff of:

(a) equal access to property ownership free from criminal stigma;
(b) equal ability to refinance, leverage, or develop the property;
(c) equal standing in the real estate marketplace;
(d) equal access to truthful government records;
(e) equal opportunity to maintain her LLC without illegal burdens;
(f) the right to operate her business free of fabricated government interference.

**207.**

The Second Circuit recognizes that conspiracies targeting economic rights and property interests fall squarely within §1985(3)'s protective scope.
**Authority:**
*Keating,* supra;
*Thomas,* supra.

## VI. Injuries Resulting from the Conspiracy

**208.**

As a direct result of Defendants' conspiracy, Plaintiff suffered:

(a) clouding of property title;
(b) diminished market and equity value;
(c) impaired ability to refinance or secure loans;
(d) reduced attractiveness to lenders, insurers, tenants, and investors;
(e) interference with LLC development plans;

(f) reputational harm;

(g) emotional distress;

(h) ongoing injury due to continuous republication of the City's false filings.

**209.**

These injuries are compensable under §1985(3).

**Authority:**

*Mian, Thomas, Scott.*

---

## VII. Relief

**210.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief correcting and retracting false filings;

(d) declaratory relief acknowledging the conspiracy;

(e) attorney's fees and costs under 42 U.S.C. § 1988.

---

## SEVENTH CAUSE OF ACTION

## 42 U.S.C. § 1986 — NEGLECT TO PREVENT A § 1985(3) CONSPIRACY

### Against All Defendants with Knowledge and Authority to Intervene

**211.**

Plaintiff repeats and realleges paragraphs 1 through 210 as though fully set forth herein.

---

## I. Legal Standard Under § 1986

*(Second Circuit Authority)*

**212.**

Under **42 U.S.C. § 1986**, any person who:

1. **knows** that a § 1985(3) conspiracy exists,

2. has the **power to prevent** or aid in preventing its wrongs,

3. and **fails or neglects** to act,

is liable for the resulting damages.

**213.**

The Second Circuit holds that §1986 liability arises when a defendant **knows of ongoing constitutional violations and fails to intervene despite having authority to do so.**

**Authority:**

*Morse v. Univ. of Vermont*, 973 F.2d 122, 127–28 (2d Cir. 1992);

*Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

## II. Defendants Had Actual Knowledge of the § 1985 Conspiracy

**214.**

The following defendants had **actual or constructive knowledge** of the conspiracy to fabricate criminal allegations, misrepresent judicial proceedings, and stigmatize Plaintiff's property:

- Detective **Greene Kush**

- Sgt. **Evan Couch**

- PO **Alva**

- PO **Crawford**

- Sgt. **Piscatella**

- ADA **Richard Farrell**

- ADA **John Carroll**

- Corporation Counsel **Goode-Trufant**, **Zangrilli**, and **Oleynik**

- John/Jane Doe NYPD officials

**215.**

Knowledge is established through:

(a) their participation in creating or reviewing fabricated reports;
(b) their access to real property transfer documents;
(c) FOIL-related communications showing no criminal case existed;
(d) their direct involvement in reviewing evidence disproving their assertions;
(e) notice from Plaintiff, her spouse, and related parties showing the filings were false.

**216.**

The Second Circuit emphasizes that officials cannot escape liability by "closing their eyes" to constitutional violations.
**Authority:** *Morse*, supra.

## III. Defendants Had the Power and Authority to Prevent or Stop the Conspiracy

**217.**

Each of the above defendants had **direct authority** or operational power to:

(a) withdraw fabricated NYPD reports;
(b) correct or retract KCDAO misrepresentations;
(c) prevent issuance of false FOIL determinations;
(d) stop Corporation Counsel from filing false Rule 11 submissions;
(e) correct the public record once notified of falsity;
(f) notify third parties or courts that no criminal case existed.

**218.**

Corporation Counsel policymakers had **ultimate authority** to withdraw or amend the City's

federal filings and thereby prevent continuing injury.
**Authority:** *Jeffes v. Barnes*, 208 F.3d 49, 57–60 (2d Cir. 2000).

## IV. Defendants Neglected or Refused to Intervene

### 219.
Despite their knowledge and authority, Defendants:

(a) refused to stop the fabrication from continuing;
(b) allowed false allegations to remain in NYPD and KCDAO records;
(c) issued or approved false FOIL responses about a nonexistent sealed case;
(d) knowingly filed or maintained false Rule 11 certifications;
(e) refused to correct filings even after incontrovertible evidence was presented;
(f) permitted ongoing republication of the false allegations;
(g) failed to take even minimal steps to prevent foreseeable harm.

### 220.
Such deliberate inaction constitutes **actionable neglect** under §1986.
**Authority:** *Brown*, supra.

## V. Plaintiff Suffered Injury as a Result of Defendants' Neglect

### 221.
Defendants' neglect directly caused or contributed to:

(a) clouding of Plaintiff's property title;
(b) reduction in property equity and market value;
(c) inability to refinance or leverage the property;
(d) ongoing harm to LLC business operations;
(e) reputational stigma and economic damages;
(f) emotional distress and anxiety;
(g) continuous injury due to ongoing publication of false allegations.

### 222.
Second Circuit law holds that §1986 liability extends to **all damages** that would have been avoided had defendants intervened.
**Authority:** *Morse*, 973 F.2d at 127–28.

## VI. Relief

### 223.
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief to correct false government records;
(d) declaratory relief recognizing defendants' neglect;
(e) attorney's fees and costs pursuant to **42 U.S.C. § 1988**.

## EIGHTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — FAILURE TO INTERVENE

### Against All Individual Defendants

**224.**

Plaintiff repeats and realleges paragraphs 1 through 223 as though fully set forth herein.

### I. Legal Standard for Failure to Intervene

*(Second Circuit Authority)*

**225.**

Under Second Circuit law, **any state actor who has a realistic opportunity to intervene in the unconstitutional conduct of another but fails to do so is liable under §1983.**

### Authority:

- *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994);

- *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988);

- *Figueroa v. Mazza*, 825 F.3d 89, 106–07 (2d Cir. 2016).

**226.**

This duty applies not only to excessive force situations, but to *all constitutional violations,* including:

(a) fabrication of evidence;
(b) constitutional defamation (stigma-plus);
(c) property-interest violations;
(d) First Amendment retaliation;
(e) publication of false information;
(f) deprivation of due process.

**Authority:** *Figueroa*, supra.

### II. Defendants Had Actual Knowledge That Constitutional Violations Were Occurring

**227.**

NYPD, KCDAO, and Corporation Counsel officials plainly knew that:

(a) no arrest existed,
(b) no arraignment occurred,
(c) no criminal case or docket existed,
(d) no sealing order existed,
(e) all allegations of deed fraud were fabricated,
(f) Plaintiff's transaction was lawful,
(g) federal Rule 11 filings contained false factual assertions,
(h) the false narrative was causing ongoing harm to Plaintiff Paul and her LLC.

Page **44** of **51**

**228.**

Knowledge was established via:

(a) internal communications;
(b) FOIL requests and contradictions;
(c) public property records;
(d) notices from Plaintiff, Wayne Wilson, and counsel;
(e) direct evidence disproving their assertions;
(f) the absence of any judicial documentation.

## III. Defendants Had the Authority and Ability to Intervene

**229.**

Each defendant had actual authority to intervene:

- **NYPD supervisors** could have corrected fabricated reports.

- **KCDAO prosecutors** could have disclosed that no case existed.

- **Corporation Counsel policymakers** could have withdrawn or amended false Rule 11 filings.

- **All individual defendants** could have taken steps to ensure the truth was reflected in municipal and federal records.

**230.**

The Second Circuit holds that if a defendant has the power to intervene, failure to do so is actionable.
**Authority:** *Anderson, Figueroa.*

## IV. Defendants Intentionally Failed or Refused to Intervene

**231.**

Despite clear knowledge and authority, Defendants:

(a) refused to correct fabricated allegations;
(b) permitted KCDAO to maintain falsehoods;
(c) made or approved false FOIL assertions;
(d) submitted and maintained false Rule 11 filings;
(e) ignored Plaintiff's demands for correction;
(f) permitted continued publication of defamatory, false information;
(g) refused to retract or amend filings even with documentary proof.

**232.**

This deliberate inaction constitutes a constitutional violation.
**Authority:** *Figueroa*, 825 F.3d at 107.

## V. Defendants' Inaction Directly Caused Plaintiff's Injuries

**233.**

Because officials failed to intervene when they could have stopped the violations, Plaintiff Paul suffered:

(a) clouded property title;
(b) diminished equity and property value;
(c) inability to refinance or leverage the property;
(d) interference with LLC operations;
(e) ongoing stigma and reputational injury;
(f) financial losses tied to the impaired property;
(g) emotional distress;
(h) repeated new harms due to continuing publication of false SDNY filings.

### 234.

Second Circuit precedent confirms that **ongoing, preventable harm** is compensable in failure-to-intervene claims.
**Authority:** *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

## VI. Relief

**235.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief compelling correction of false filings;
(d) declaratory relief;
(e) attorney's fees under **42 U.S.C. § 1988**.

## NINTH CAUSE OF ACTION

## DAMAGES AND DEMAND FOR JURY TRIAL

*(With Second Circuit Case Law & Precedents)*

**236.**
Plaintiff repeats and realleges paragraphs 1 through 235 as though fully set forth herein.

## I. Compensatory Damages

**237.**
As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff **Christiana C. Paul** suffered substantial compensatory damages, including:

(a) clouding of property title;
(b) reduction of property and equity value;
(c) inability to refinance, leverage, or borrow against the property;
(d) delays and losses in development, rental, or improvement plans;

(e) interference with LLC operations and revenue;

(f) reputational harm among lenders, insurers, and real estate professionals;

(g) emotional distress, humiliation, anxiety, and mental suffering;

(h) ongoing harm due to repeated publication of false Rule 11 filings.

**238.**

These categories of damages are fully compensable under Second Circuit law for due process violations, stigma-plus defamation, conspiracy, and fabrication cases.

**Authority:**

*Kerman v. City of New York*, 374 F.3d 93, 125–27 (2d Cir. 2004);

*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004);

*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009).

## II. Special Damages — Real Property and Business Harm

**239.**

Plaintiff seeks special damages reflecting actual measurable economic losses, including:

(a) lost refinancing opportunities;

(b) increased lending costs or denial of credit;

(c) inability to use the property as collateral;

(d) decreased market value and equity;

(e) impairment of LLC business plans and profits;

(f) reduced attractiveness to tenants, contractors, and investors;

(g) transactional delays causing financial harm.

**240.**

Second Circuit law recognizes such **business and financial losses** as compensable property-interest injuries.

**Authority:**

*Spinelli*, supra;

*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005);

*Green v. Bauvi*, 46 F.3d 189 (2d Cir. 1995).

## III. Emotional Distress Damages

**241.**

Plaintiff suffered substantial emotional harm due to:

(a) reputational humiliation tied to false criminal accusations,

(b) anxiety over the security of her property,

(c) stress caused by the clouded title and obstruction of her property rights,

(d) betrayal and distress at the misconduct of law enforcement and municipal officials.

**242.**

Emotional damages are fully recoverable in Fourteenth Amendment, First Amendment, and stigma-plus cases.

**Authority:**

*Kerman*, supra;

*Miner v. City of Glens Falls*, 999 F.2d 655 (2d Cir. 1993).

## IV. Punitive Damages (Against Individual Defendants)

**243.**

Plaintiff seeks **punitive damages** against individual NYPD officers, ADA defendants, and Corporation Counsel attorneys because their conduct was:

(a) reckless,
(b) malicious,
(c) intentionally deceptive,
(d) deliberately indifferent to Plaintiff's rights,
(e) calculated to conceal wrongdoing and deflect accountability.

**244.**

Punitive damages are appropriate where a defendant acts with reckless or callous indifference to federally protected rights.
**Authority:**
*Smith v. Wade*, 461 U.S. 30 (1983);
*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990).

## V. Injunctive Relief

**245.**

Plaintiff seeks permanent injunctive relief ordering the City of New York to:

(a) correct, amend, or withdraw all false Rule 11 filings in SDNY;
(b) issue corrective statements retracting fabricated criminal allegations;
(c) notify lenders, title insurers, and agencies of the falsity;
(d) remove defamatory and fabricated allegations from accessible databases;
(e) prohibit further publication of false criminal statements.

**Authority:**
*Gonzalez v. Hasty*, 802 F.3d 212, 220–23 (2d Cir. 2015);
*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009).

## VI. Declaratory Relief

**246.**

Plaintiff requests declaratory relief that:

(a) the City's Rule 11 filings were materially false;
(b) NYPD and KCDAO fabricated and adopted false allegations;
(c) the City ratified unconstitutional misconduct;
(d) Defendants violated Plaintiff's constitutional rights under the First and Fourteenth Amendments.

**247.**

Declaratory relief is appropriate where ongoing constitutional violations cause continuing harm.

## VII. Attorney's Fees and Costs

**248.**
Plaintiff seeks reasonable attorney's fees and legal costs under **42 U.S.C. § 1988**, as this action vindicates civil rights guaranteed by §§1983, 1985, 1986, and the Constitution.

## VIII. Pre- and Post-Judgment Interest

**249.**
Plaintiff seeks pre-judgment and post-judgment interest to fully compensate her for financial harms sustained over time.

## DEMAND FOR JURY TRIAL

**250.**
Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the **Seventh Amendment**, Plaintiff **DEMANDS A TRIAL BY JURY** on all issues so triable.

**251.**
The Second Circuit recognizes that factual questions regarding fabrication, conspiracy, stigma-plus, property deprivation, municipal liability, and retaliatory motive are for a **jury** to decide.
**Authority:**
*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004);
*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996).

## PRAYER FOR RELIEF

**252.**
WHEREFORE, Plaintiff **CHRISTIANA C. PAUL**, through her undersigned counsel or pro se, respectfully demands judgment in her favor and against all Defendants, jointly and severally, and requests that this Court award the following relief:

## I. Compensatory Damages

**253.**
Award **compensatory damages** in an amount to be determined at trial for all injuries suffered by Plaintiff, including but not limited to:

(a) clouding of title to 1883 East 53rd Street;
(b) reduced market value and diminished equity in the property;
(c) interference with refinancing, lending, and collateralization;
(d) disruption of business operations and economic opportunities of 1883 East 53rd Street, LLC;
(e) interference with development plans, rental income, and improvements;
(f) reputational harm caused by false, government-created criminal allegations;
(g) emotional distress, humiliation, anxiety, and mental suffering;
(h) all continuing damages caused by ongoing publication of Defendants' false filings.

## II. Special Damages

**254.**

Award **special damages** corresponding to:

(a) lost financing opportunities;
(b) increased costs or denials of credit;
(c) business losses to Plaintiff's LLC arising from impaired property title;
(d) reduced tenant, contractor, insurer, and investor confidence;
(e) transactional delays resulting in financial injury.

**Authority:** *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009).

## III. Punitive Damages (Against Individual Defendants)

**255.**

Award **punitive damages** against all individual defendants (NYPD, KCDAO, and Corporation Counsel personnel) whose misconduct was intentional, malicious, reckless, or deliberately indifferent to Plaintiff's constitutional rights.

**Authority:** *Smith v. Wade*, 461 U.S. 30 (1983).

## IV. Declaratory Relief

**256.**

Issue a declaratory judgment stating that:

(a) Defendants' actions violated Plaintiff's First and Fourteenth Amendment rights;
(b) the NYPD/KCDAO criminal narrative was fabricated;
(c) no arrest, arraignment, docket, or sealed criminal case ever existed;
(d) Corporation Counsel's Rule 11 filings were materially false;
(e) the City ratified unconstitutional acts, creating Monell liability.

Declaratory relief is appropriate to clarify Plaintiff's rights and the unlawfulness of ongoing government conduct.

## V. Injunctive Relief

**257.**

Enter permanent injunctive relief ordering the City of New York and its agents to:

(a) correct, amend, or withdraw all false Rule 11–certified filings relating to Plaintiff or the deed transfer;
(b) retract fabricated criminal allegations from SDNY dockets;
(c) issue corrective statements acknowledging that no crime, case, arrest, arraignment, or sealing occurred;
(d) notify lenders, title insurers, and other agencies of the falsity of Defendants' statements;
(e) cease further publication, republication, or reliance on fabricated criminal allegations;
(f) restore Plaintiff's property rights, business credibility, and ability to use or leverage the property.

## VI. Attorney's Fees and Costs

**258.**

Award reasonable attorney's fees and costs under **42 U.S.C. § 1988**, as this action enforces civil rights protected by 42 U.S.C. §§ 1983, 1985, 1986, and the First and Fourteenth Amendments.

## VII. Pre- and Post-Judgment Interest

**259.**

Award pre-judgment and post-judgment interest to fully compensate Plaintiff for the ongoing deprivation of her property, financial, reputational, and constitutional rights.

## VIII. Such Other and Further Relief

**260.**

Grant such other, further, and equitable relief as this Court deems just, proper, and necessary to remedy Defendants' ongoing constitutional violations.

## SIGNATURE BLOCK

Respectfully submitted,

**Christiana C. Paul**
Plaintiff, Pro Se
Email: wilway25@gmail.com